**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

XAVIER MAURICE HOOD        )
     **Plaintiff,**         )
                            )     **Civil Action No. 1:20-cv-00048**
**v.**                          )     **Judge Campbell / Frensley**
                            )
**KILOLO KIJAKAZI,**         )
**Acting Commissioner of Social Security[1]**  )
     **Defendant.**         )


## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security which found that Plaintiff was not disabled, and which denied Plaintiff Supplemental Security Income ("SSI") Benefits, as provided under Title XVI of the Social Security Act, as amended. The case is currently pending on Plaintiff's Motion for Judgment Based on the Administrative Record. Docket No. 23. Plaintiff also filed a Supporting Memorandum of Law. Docket No. 23-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 24.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

### I. INTRODUCTION

Plaintiff's mother, Cassandra Kay Hill, filed an application on behalf of Plaintiff for childhood SSI on March 1, 2018, alleging disability since February 23, 2018, due to Plaintiff's

---

[1] Kilo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing Andrew M. Saul in that role. Kijakazi is therefore appropriately substituted for Saul as the defendant in this action, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

"learning disability, severe head trauma from car accident-causing memory problems, right clavicle broken in accident and [lack of] proper use of his right arm." Docket No. 21 ("TR"), pp. 185, 201.[2] Plaintiff's application was denied both initially (TR 83) and upon reconsideration (TR 97). Plaintiff subsequently requested (TR 116) and received (TR 50-70) a hearing. Plaintiff's hearing was conducted on July 18, 2019, by Administrative Law Judge ("ALJ") Dennis Reap. TR 52. At the hearing, Plaintiff was represented by legal counsel. *Id.* Plaintiff, his mother, Cassandra Kay Hill, and vocational expert ("VE"), Catrinya Dunn, appeared and testified. *Id.*

On August 19, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-48. Specifically, the ALJ made the following findings of fact:

1. **The claimant was born on September 12, 2001. Therefore, he was an adolescent on February 23, 2018, the date [the] application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).**

2. **The claimant has not engaged in substantial gainful activity since February 23, 2018, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).**

3. **The claimant has the following severe impairments: fractures of the upper limb; neurocognitive disorders due to traumatic brain injury; and learning disorders (20 CFR 416.924(c)).**

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**

5. **The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a).**

6. **The claimant has not been disabled, as defined in the Social Security Act, since February 23, 2018, the date the application was filed (20 CFR 416.924(a)).**

---

[2] Plaintiff turned eighteen years old prior to the filing of this action.

TR 18-44.

On September 30, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 175-84. On June 18, 2020, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct.

206, 216, 83 L.Ed. 126 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner, however, did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), *citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits. *See, e.g.,* 42 U.S.C. § 1382c. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 provides that an individual under the age of eighteen (18) is considered disabled for purposes of eligibility for disability benefits "if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c.

At the administrative level of review, a minor claimant's case is considered under a three-step sequential evaluation process as follows:

4

(1) If the claimant is engaging in substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have a medically determinable impairment or combination of impairments which is/are severe and which is/are expected to result in death or lasted or is/are expected to last for a continuous period of not less than twelve (12) months, then he or she is not disabled.

(3) If the claimant's impairment or combination of impairments does not meet, equal or functionally equal a listing, the child is not disabled. If, however, the claimant's impairment(s) results in "marked and severe functional limitations," it is functionally equal to the "Listing of Impairments" in Appendix 1, Subpart P, Part 404. (*See* 20 CFR § 416.902.) If the impairment(s) does not meet, equal or otherwise result in "marked and severe functional limitations," the child is not disabled.

20 CFR § 416.924.

Consideration is given to the child's functional ability in each of the following six broad domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and,
6. Health and physical well-being.

20 CFR § 416.926a(b)(1).

For purposes of determining functional equivalence, a child who has "marked limitation"[3] in two areas of development or functioning, or "extreme limitation"[4] in one area, has an impairment that is functionally equivalent in severity to the required Listing. 20 CFR § 416.926a(d). No single

---

[3] "Marked limitation" is a limitation that is "'more than moderate," but "less than extreme." 20 CFR § 416.926a(e)(2)(i). A "marked limitation" may arise when several activities or functions are limited, or when one activity or function is limited, as long as the limitation seriously interferes with the child's functioning. *Id.*

[4] "Extreme limitation" is a limitation that is "more than marked," but does not necessarily mean a total lack or loss of ability to function. 20 CFR § 416.926a(e)(3)(i). "Extreme limitation" arises when the impairment(s) interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* A child's day-to-day functioning may be very seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the

piece of information taken in isolation, however, can establish whether a child has a "marked" or an "extreme" limitation. 20 CFR § 416.926a(e)(4)(i). Rather, when making a disability determination, the ALJ must consider all relevant medical and non-medical information. *See* 20 CFR §§ 416.924a (*i.e.*, medical evidence, school performance, test scores, parental information, etc.), 416.924b (*i.e.*, age), and 416.929 (*i.e.*, symptoms and pain). The ALJ must additionally evaluate the effects of a child's impairment(s) on his or her functioning.[5]

### C.    Plaintiff's Statement of Errors

Plaintiff contends that:

> Substantial evidence does not support the ALJ's evaluation of Mr. Hood's claim for SSI. Specifically, [Plaintiff] contends that the ALJ committed reversible error when he: ([1]) found that Mr. Hood's impairments did not functionally equal a listing; and (2) failed to properly weigh the evidence related to his disabling symptoms.

Docket No. 23-1, pp. 12-13.

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and remanded, or in the alternative, remanded for further administrative proceedings. *Id.* at 20.

Sentence four of §405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

---

impairment(s) limit several activities. *Id.*

[5] *i.e.*, (1) how well the child can initiate and sustain activities; how much extra help the child needs, and the effects of structured or supportive settings (*see* §416.924a(b)(5)); (2) how the child functions in school (*see* §416.924a(b)(7)); and (3) the effects of the child's medications or other treatment (*see*

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

### 1. Plaintiff's Impairments Do Not Functionally Equal a Listing

Plaintiff argues that "the ALJ erred when he found that Mr. Hood's impairments did not functionally equal a listed impairment" because the ALJ "fail[ed] to find that Mr. Hood had a marked limitation in the domains of 1) acquiring and using information; and 2) attending and completing tasks." Docket No. 23-1, pp. 13, 15. Plaintiff does not contend that the child's impairments meet or medically equal the criteria of any listing. *See id.* at 12-13.

Regarding acquiring and using information, Plaintiff argues that "substantial evidence does not support the ALJ's findings." *Id.* at 16. Specifically, Plaintiff cites the following evidence:

> The record shows that Mr. Hood performed poorly in school and was placed in a special education program (Tr. 347-62). In fact, educational records dated April 26, 2018, show that Mr. Hood was failing all of his classes with the exception of music (Tr. 448). Testing revealed that Mr. Hood retained significant limitations in efficiently using and implementing higher-level meta-cognitive and meta memory strategies necessary for efficient learning and subsequent retrieval of information (Tr. 474). Repetition alone did not increase the information Mr. Hood could learn after having it presented to him (Tr. 474). He exhibited limitations in long term memory shortage [*sic*] and weakness in incidental visual memory abilities (Tr. 474). Mr. Hood exhibited difficulties with memory and efficient retrieval of information (Tr. 474). He also retained difficulty with encoding verbal information (Tr. 474). Based upon the examination results, Dr. Roof made many recommendations, including that Mr. Hood be presented with the opportunity to learn new activities before being transitioned to independent learning and confronted with potential failures, given written instructions and support when he showed difficulty with comprehension of verbal instructions, limiting the amount of information presented to him at once, receiving short, organized concise instructions (Tr. 476).

---

§416.924a(b)(9)).

*Id.* at 15-16.

Plaintiff also argues that "[s]ubstantial evidence does not support the ALJ's determination that Mr. Hood retained less than marked limitations in the domain of attending and completing tasks (Tr. 36)." *Id.* at 16. Plaintiff contends that "the ALJ impermissibly cherrypicked the evidence in evaluating Mr. Hood's claim . . . ." *Id.* at 18.

Defendant responds that the medical evidence is inconsistent with Plaintiff's claims of "marked limitations in the domains of acquiring and using information and attending and completing tasks." Docket No. 24, p. 9. Defendant further responds that:

> . . . Plaintiff relies to his school performance and the evaluation of Kreig Roof, Ph.D. <u>See</u> Pl.'s Br., Pacer Document 23-1, PageID # 654. However, the ALJ considered this evidence in evaluating the record. The ALJ considered Plaintiff's IEP, but also noted that he graduated from high school with a regular diploma (Tr. 19, 34-35, 54). The ALJ also properly considered Dr. Roof's evaluation (Tr. 22-25, 30, 35, 466-78). Contrary to Plaintiff's suggestion, Dr. Roof never opined that he had marked limitations in any of the functional domains. As the ALJ properly considered the evidenced [*sic*] cited by Plaintiff, he is essentially arguing that this Court should reweigh evidence already considered by the ALJ and come to a contrary conclusion. That is not the role of this Court. <u>See</u> <u>Dyson v. Comm'r of Soc. Sec.</u>, 786 F. App'x 586, 588 (6th Cir. 2019).

*Id.* at 9-10.

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her*, 203 F.3d at 389, *citing Richardson*, 402 U.S. at 401. "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell*, 105 F.3d at 245, *citing Consol. Edison Co.,* 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand

if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273. If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst*, 753 F.2d at 519, *citing Allen*, 613 F.2d at 145.

As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute Asubstantial evidence.@ In his decision, the ALJ noted Plaintiff's receipt of special education services (TR 23-24, 28, 34-35, 37) but also considered Plaintiff's testimony that he was able to graduate high school with a regular diploma. *Id.* at 19, 28, 33, 37, 41.

Specifically, regarding the domain of acquiring and using information, the ALJ notes testing results from Dr. Doineau that Plaintiff "understood instructions when given the first time. His attention, concentration, persistence, and motivation were within normal limits. He did not appear to have any auditory, visual, or psychomotor deficits that might have negatively affected his performance and resulting scores." TR 33, *citing* TR 460. The ALJ also discusses the medical findings of Dr. Roof:

> Dr. Roof noted the claimant demonstrated no overt signs of apprehension with regard to the evaluation and separated easily from his mother to accompany this neuropsychologist to the evaluation room. The claimant also transitioned between activities without difficulty. Speech was of normal rate, volume, and prosody. He initiated and engaged in reciprocal conversation throughout the evaluation. The evidence shows the claimant appeared to enjoy interaction with Dr. Roof and that the claimant's mood was bright and engaging throughout the assessment.

*Id.* at 35 (citation omitted), *citing* TR 469.

Regarding the domain of attending and completing tasks, the ALJ notes medical evidence from Dr. Boon:

> . . . [Plaintiff] was awake, alert, and in no acute distress. He was alert and interactive with a normal attention span and concentration. He

9

> responded to questions and commands immediately. He had a normal fund of knowledge and his recent and remote memory was intact. The claimant's comprehension was intact, speech was spontaneous and fluent with appropriate content.

*Id.* at 37, *citing* TR 490-91.

Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and Plaintiff's mother. *Id.* at 19, 28, 33, 37. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff does not have marked limitation in the domains of 1) acquiring and using information and 2) attending and completing tasks. *Id.* at 33, 36. Because substantial evidence supports the ALJ's determination that Plaintiff "does not have an impairment or combination of impairments that functionally equals the severity of the listings," the ALJ's decision must stand. *Id.* at 26.

## 2. Evaluating the Evidence of Disabling Symptoms

Plaintiff argues that "the ALJ improperly evaluated Mr. Hood's disabling symptoms."

Docket No. 23-1, p. 18. Specifically, Plaintiff contends that:

> In discounting Mr. Hood's allegations of disabling symptoms, the ALJ relies on his daily activities, but his activities are not consistent with the ability to perform full time work (Tr. 36). The ALJ relies on Mr. Hood's discussion with the consultative examiner, in which he indicated that he worked with a friend after school doing paint jobs (Tr.458). However, the ALJ did not note that Mr. Hood also testified that he had to stop frequently (Tr. 458). Additionally, Mr. Hood testified that he tried to do a different job in construction , he [*sic*] but was unable to do so because of its demands (Tr. 458). Additionally, the ALJ noted that Mr. Hood saved his money and purchased a vehicle (Tr. 458). However, the record shows that Mr. Hood was never able to pass the written test to obtain a driver's license (Tr. 467). Additionally, the evidence shows that Mr. Hood experienced great difficulty with reading and filling out forms and needed constant reminders from family to perform simple tasks (Tr. 54, 64). Therefore, the ALJ did not properly evaluate Mr. Hood's daily activities.

*Id.* at 19-20.

Defendant responds that: "the ALJ properly considered Plaintiff's daily activities in assessing

his subjective allegations (Tr. 20-21, 25, 28, 30, 35-36, 38-41, 44). Inconsistent with his alleged limitations, Plaintiff worked part-time painting (Tr. 21, 28, 35-36, 38-41, 458)." Docket No. 24, p. 13. Defendant also responds that: "In addition to work activity, the ALJ properly considered Plaintiff's other daily activities" and ". . . properly found Plaintiff's activities inconsistent with his subjective allegations." *Id.* at 13-14.

The ALJ in the case at bar properly reviewed Plaintiff's part-time work history (TR 35-36) and daily activities (TR 41) but found that "[a]s for statements about the intensity, persistence, and limiting effects of the claimant's symptoms, they are inconsistent with the evidence of record as a whole." TR 27. Regarding Plaintiff's allegations of disabling symptoms, The ALJ notes:

> During the hearing, the claimant testified he recently graduated high school with a regular diploma. He does not have a driver's license. He enjoys being outdoors. Regarding disability, the claimant testified he has a hard time remembering and focusing on things since the car accident. The claimant testified he can read a newspaper article but will not remember what he read. The claimant testified he has tried to apply for jobs but could not remember what to put in the application. The claimant testified he has difficulty putting on shirts and socks. However, the claimant testified further that he likes to throw football and is able to do so with his left hand. In addition, he and a friend like to shoot basketball and go fishing.
>
> Ms. Hill testified the claimant recently underwent court ordered treatment for possession of stolen property. She testified the claimant stays with his uncle on a farm every day while she is working. Ms. Hill testified the claimant forgets to perform chores. She testified he "got that way" after the accident.
>
> In contrast to the allegations, the evidence of record shows the claimant reportedly works with a friend doing painting jobs at least six hours per day. The claimant reported working and saving enough money to purchase a 1997 Yukon. (8F, p3) In addition, the claimant reportedly worked eight-hours per day at a thrift store as community service. The claimant reported he performed all kinds of tasks like sorting through donations, washing them, hanging them up and tagging them before placing them back on the floor to be sold. He finished this in June. (*Id.*, p3)

TR 28, *citing* TR 458 .

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were

11

considered. *Id.* at 28-32. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province. 20 CFR § 1520c(c)(2).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *cf. King v. Heckler,* 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), and the reasons must be supported by the record. *See King*, 742 F.2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff's allegations were "inconsistent with the evidence of record as a whole." TR 27. In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

12

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**